UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL P. CIESLAR, | |
|     Plaintiff, | 2:05-cv-1114-LDG-RJJ |
| v. | **ORDER** |
| PARDEE HOMES OF NEVADA, et al., | |
|     Defendants. | |

    This is an employment case in which plaintiff claimed wrongful termination and violation of the Family Medical Leave Act. Plaintiff, being represented by his current counsel, James Lee, reached a settlement with defendants. However, plaintiff's motion to strike a lien for attorney's fees and costs noticed by John Aldrich, successor of the firm of Aldrich & Bryson, remained pending. The court conducted hearings on the matter on January 6 and 15, 2009, and has reviewed the briefs of the parties.

    In September 2005, plaintiff retained attorney Bryson and signed a contingency agreement with Aldrich & Bryson in January 2006. According to the agreement,

    (1)    The firm would be compensated at 33 1/3 percent of any recovery, or if the recovery came within one month of trial or thereafter, 40 percent of the recovery, for its representation of plaintiff.

    (2)    Plaintiff would be charged for the costs of litigation.

1    (3)  Plaintiff could terminate the firm's services on written notice, and the firm's
2         representation would be terminated at (1) plaintiff's written notice, (2) the firm's
3         withdrawal, or (3) the substantial completion of the substantive work.
4    (4)  Plaintiff granted the firm a lien on any recovery for attorney's fees and costs.
5         However, such a lien applied only to those fees and costs for which "you have, or
6         will be, invoiced by the Firm, relating to the representation of you in this matter."

Brent Bryson handled plaintiff's case until December 14, 2007, when Bryson sent plaintiff a letter indicating that he was taking a position with another law firm, and that it would be impossible for him to continue as plaintiff's attorney. In this letter, Bryson recommended that plaintiff remain with Aldrich as his attorney, but indicated that plaintiff could opt not to do so, and find another attorney. The letter also indicated that if plaintiff did not wish to remain with Aldrich, and was not able to find a substitute attorney by the end of the year, the firm would file a motion to withdraw, and plaintiff would be able to locate another attorney after the motion was granted.

In February 2008, Aldrich met with plaintiff and indicated that he would remain on the case to make a settlement attempt after the motion for summary judgment was ruled upon. At that time, Aldrich informed plaintiff that he would not take the case to trial because the firm had covered plaintiff's costs of almost $12,000 which plaintiff had not paid, and that Aldrich would not incur the costs of trial. After the court denied defendants' summary judgment motion, Aldrich sent plaintiff a letter on April 1, 2008, asking what amount plaintiff would accept for settlement, and directing plaintiff that "[i]f you wish to move forward with trial, you should immediately retain new counsel." On April 8, 2008, plaintiff informed Aldrich by email (to be followed by a signed letter) that James Lee would be representing him, and requested the files on the case. On June 22, 2008, Aldrich noticed a lien for attorney's fees and costs. Aldrich seeks either 40 percent of the gross recovery, or $103,000 in actual fees, plus $11,600 in costs.

In his motion to strike the lien, plaintiff argues that Bryson had been his counsel from the beginning of the case, and that he abandoned plaintiff's case when he changed firms and informed plaintiff that he could no longer continue as plaintiff's lawyer. For his part, Aldrich claims that plaintiff contracted with the firm for representation, and that pursuant to the terms of the agreement, the firm was entitled to the percentage or actual fees, plus costs. The court finds that even if Bryson's termination of his representation did not amount to an abandonment of plaintiff's case, that factor, combined with other circumstances discussed below, preclude in law and equity the maintenance of the full lien in this case.

Bryson unilaterally terminated his representation of plaintiff when Bryson changed firms, and further consented to plaintiff either staying with Aldrich or getting new counsel. Furthermore, Bryson has not denied that his termination of his representation of plaintiff was solely a result of his switching firms, and not because plaintiff was in arrears on the payment of costs.

The court finds it very troubling that at no time did Bryson (when he consented to allow plaintiff to retain new counsel), or Aldrich (upon informing plaintiff that he would not take the case to trial, and then directing plaintiff to immediately retain new counsel), tell plaintiff that plaintiff would remain obligated for fees pursuant to the contingency agreement. Nor did the terms of the agreement set forth how fees would be treated upon termination of representation.

In addition, Bryson or Aldrich did not make clear to plaintiff that, pursuant to the agreement, the firm had the contractual right and duty to represent plaintiff until the termination provisions of the agreement were accomplished. In that respect, the court finds that Aldrich & Bryson did not timely comply with the termination provisions of the agreement before compelling plaintiff to retain new counsel. The contingency fee agreement specified that the firm's services would only be terminated upon plaintiff's written notice or upon the firm's withdrawal. At the time Aldrich informed plaintiff to immediately acquire new counsel, he had not withdrawn from the case, or even filed a motion to withdraw with a justifiable reason. Morever, Aldrich's direction

3

to plaintiff to retain new counsel at that time placed plaintiff in the untenable position of being forced to try to retain a new lawyer on short notice before trial with the potential of conflicting claims to fee recovery, or to accept the offered settlement.

Finally, the record indicates that plaintiff was invoiced by the firm for costs. However, there is no indication that plaintiff was ever invoiced by the firm for actual attorney's fees (which could have been calculated at the time) before Aldrich asserted the lien, as was required by the contingency agreement. Had plaintiff been properly invoiced for such fees before Bryson's or Aldrich's withdrawal, he at least would have been on direct notice of the potential fee obligation, and would have been allowed to take that into consideration when seeking new counsel. As it were, upon their withdrawal, neither Bryson nor Aldrich informed plaintiff of the actual amount of attorney's fees they had incurred.

In sum, the court finds that Aldrich & Bryson are not entitled to recover either their actual attorney's fees or a percentage of the settlement in this case. However, Aldrich & Bryson are entitled to unpaid costs. There is no dispute that plaintiff still owes, and has been invoiced for, $11,600 in costs. Accordingly,

THE COURT HEREBY ORDERS that plaintiff's motion to strike former counsel's lien for attorney's fees (#79) is GRANTED.

THE COURT FURTHER ORDERS that plaintiff's former counsel, Aldrich & Bryson, shall recover $11,600 from plaintiff for costs.

DATED this ___6___ day of February, 2009.

_____
Lloyd D. George
United States District Judge